# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49975-4-II |
| Respondent, | |
| v. | |
| SERGEY FEDORUK, | ORDER GRANTING MOTION TO PUBLISH |
| Appellant. | |

Appellant, Sergey Fedoruk, filed a motion to publish this court's opinion filed on June 26, 2018. After consideration, the court grants the motion. It is now

**ORDERED** that the final paragraph in the opinion which reads "A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered." is deleted. It is further

**ORDERED** that the opinion will now be published.

**FOR THE COURT**

**PANEL**: Jj. Worswick, Bjorgen, Sutton

Worswick, J.

We concur:

Bjorgen, J.

Sutton, J.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49975-4-II |
| Respondent, | |
| v. | |
| SERGEY V. FEDORUK, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Sergey Fedoruk, who has a long history of serious mental illness, appeals his second degree murder conviction. Although prior to trial Fedoruk was deemed competent, he claims his mental health destabilized during the course of the trial. He argues that the trial court erred when it proceeded with his trial after it became apparent that his mental state had deteriorated to the point where he was no longer competent. We agree, and we reverse and remand for a new trial.[1]

## FACTS

### I. Background

In 2002, Fedoruk moved to the United States from Ukraine. While living in Ukraine, Fedoruk suffered a head injury in a motorcycle accident, was diagnosed with schizophrenia, and

---

[1] Fedoruk also argues his right to be present was violated, the trial court improperly denied his request for a mistrial, and the trial court erred by ordering Fedoruk to be placed in restraints and by allowing his interpreters to move away from him. Fedoruk also filed a statement of additional grounds (SAG) for review. Because the first two issues are dispositive in this case and because we reverse Fedoruk's conviction and remand for trial, we do not consider these arguments or the issues in Fedoruk's SAG.

was twice admitted to a psychiatric hospital. After arriving in the United States, Fedoruk lived with his family. Over the course of years, doctors have prescribed numerous psychotropic and antipsychotic medications, but Fedoruk has a history of poor compliance with the medication regimens. He also has a known history of rapid decompensation.

In 2007, prior to the incidents in this case, Fedoruk was charged with robbery, theft, trespass, and four counts of assault. He underwent competency evaluations in both 2007 and 2008. In 2007, an evaluator diagnosed Fedoruk with "Bipolar 1 Disorder . . . with psychotic features" but determined that he was competent to stand trial. Clerk's Papers (CP) at 89. However in 2008, prior to his trial, Fedoruk was again admitted to the hospital for covering himself in feces while in jail. He underwent another competency evaluation and an evaluator found him to be competent but also opined that Fedoruk was likely insane at the time he committed the crimes in 2007. The jury found Fedoruk not guilty by reason of insanity for most of the charges; he pled guilty to other amended charges.

In September 2010, Fedoruk's family requested that the police take him to the hospital because he appeared "disheveled, disorganized and had pressured speech," and had been eating dirt and dog food and licking water, which he claimed was holy water, off of the floor. CP at 89. Fedoruk had not slept and had not taken his psychotropic medication. Fedoruk was then involuntarily detained and found to be "gravely disabled." CP at 89. Fedoruk was admitted to Western State Hospital (WSH). WSH discharged Fedoruk three months later and provided him with a discharge plan that included medication and supervision by the Department of Corrections.

2

In 2011, Fedoruk severely bit his own finger and, while in the hospital for that injury, he "was screaming in Ukrainian and not making sense." CP at 89. A doctor opined that Fedoruk was psychotic and prescribed him psychotropic medications.

In August, 2011, police found Serhiy Ischenko's body down an embankment behind the property where Fedoruk lived.[2] After an investigation, the State charged Fedoruk with second degree murder. The case went to trial and a jury found Fedoruk guilty. Fedoruk appealed, and this court reversed Fedoruk's conviction because his defense counsel failed to timely retain a mental health expert and failed to investigate a mental health defense.

## II. PRETRIAL

In May 2015, while Fedoruk was in jail awaiting his second trial for Ischenko's murder, a psychiatrist evaluated Fedoruk and diagnosed him with schizoaffective disorder. During the evaluation, Fedoruk described many occasions of manic episodes all of which included "high energy, little sleep, and delusional thought content." CP at 91.

In September 2015, the jail reported that Fedoruk was no longer taking his mood stabilizing medication. The court ordered Fedoruk to undergo another mental health evaluation. Fedoruk revealed to the evaluator that he had stopped taking his mood stabilizing medication, because he was currently in jail and could not "hurt anybody." CP at 87. Fedoruk also reported that he becomes "sick" when he has not slept and that he experienced episodes of mania after his earlier murder trial. CP 87. He stated that the prison had refused his request for sleeping pills. The evaluator noted that Fedoruk's "inability to sleep was known to him as a precursor for a manic episode including paranoid delusions." CP at 88. Fedoruk reported that during a manic

---

[2] Ischenko was Fedoruk's relative by marriage.

episode he is "[n]ot in control—brain isn't working right." CP at 88. Fedoruk also stated that during his manic episodes he believed that he had special powers and has paranoid delusions of harming him and his family. The evaluation also included a report on Fedoruk's judgment and insight of his disorder:

> Insight/Judgment: Mr. Fedoruk showed fair insight into the nature of his episodic mood disorder and claimed he had the ability to accurately judge when he required medication in the jail environment based on a change in his sleeping pattern—i.e. when he began not sleeping. He also stated in the community he would have to remain consistently medication adherent. However, by his own description, onset of sleep disturbance also brings with it a level of lost control of his brain and behaviors.

CP at 94. Ultimately, the evaluator determined that Fedoruk was competent to stand trial, but also noted that because he was not compliant with his medication, he was at a "higher risk" of having returning symptoms and being susceptible to "other factors that can destabilize symptoms of his major mood disorder including increased stress one would expect during a court trial." CP at 95. The evaluator stated that a forced medication order may be required.

Three days after the competency evaluation Fedoruk had a psychiatric episode that led to an emergency hearing where the court found Fedoruk incompetent. The court ordered that Fedoruk be admitted to WSH and receive forced medication. During a delay in transferring Fedoruk to WSH, he displayed unstable behavior. The jail notes state:

> Fedoruk at times was showing improvement, and at other times exhibited deteriorated conditions, which included manic-like symptoms, with yelling and pounding on his cell door, throwing liquid all over floor, pacing in his cell . . . . He would occasionally refuse his prescribed medication . . . .

CP at 148.

In December 2015, Fedoruk was finally admitted to WSH where he displayed more vacillating behavior. At one point, Fedoruk was being loud and "extremely bossy" toward others and a psychiatrist described him as "disinhibited" and not taking medication. CP at 148. A few days later, Fedoruk's behavior and mood began to "escalate" and he began washing himself and his clothing in a toilet bowl and sink. CP at 148. That same day he was physically and verbally assaultive which resulted in Fedoruk being restrained. Fedoruk was also "agitated, loud, touching other patients, and instigating altercations." CP at 149.

During the next weeks, Fedoruk continued to have "manic-like behavior" and he was "hard to redirect." CP at 149. Staff reported that Fedoruk was "[u]pset about various things . . . constantly handwashing clothing . . . taking bath in sink" and required extra medication and emergency response for de-escalation. CP at 149.

Fedoruk began to stabilize by January 2016 and his medications were adjusted. However, a week later Fedoruk denied needing medication and again became noncompliant. Doctors placed Fedoruk on medication watch to ensure Fedoruk's compliance, and thereafter his mood and behavior improved entering into February.

In February, Fedoruk underwent another competency evaluation and the evaluator determined that Fedoruk had the ability to understand the charges against him and court proceedings and that he had the capacity to assist his attorney. In March, Fedoruk had a forensic mental health evaluation addressing his capacity at the time of the murder. An evaluator noted that at the time of the evaluation Fedoruk had "a moderate to high risk for reoffending and dangerous behavior" and that his dangerous behavior would "increase should he discontinue his medications." CP at 180.

In April, the court held a hearing regarding the need for another forced medication order. The trial court noted Fedoruk's "past history of rapid decompensation," and ruled that the earlier forced medication order was still in effect. Report of Proceedings (RP) (April 12, 2016) at 77. At that hearing, the court and counsel discussed trial scheduling and both the State and defense counsel agreed that the trial would last two weeks.

In early September, the trial court held a pretrial hearing. During the hearing, defense counsel stated:

> And at the same time, we do not want to continue this trial. There are all sorts of problems with that. The Court's aware of—you know, we've had competency issues that have delayed things. My client's competent; I think witnesses are available, and it's our desire to go to trial as scheduled.

RP (Sept. 9, 2016) at 87.

### III. TRIAL

Trial began on September 20. During trial, Russian interpreters assisted Fedoruk through electronic headsets. On Wednesday, September 28, defense counsel informed the court that Fedoruk was experiencing significant back pain. Defense counsel stated that Fedoruk was in so much pain that he was having a hard time focusing. Fedoruk requested a continuance until Tuesday of the following week. The State objected based on witness availability. The court then denied Fedoruk's request and stated:

> Well, I already know that we have witness—or pardon me, jurors, who had commitments in the first week of October and beyond that would mean that any continuance would mean that we'd be starting over, and I'm just not in a position to grant that request.
>
> Mr. Fedoruk needs to talk to jail medical staff when he goes back over at the lunch hour, and if they have any concerns then we can re-address the matter.

RP (Sept. 28, 2016) at 8.

Later that day, during a short recess, corrections officers placed Fedoruk in restraints.[3] The court noted that Fedoruk had "been getting more concerned about his physical situation and has been insistent that he be taken to the hospital." RP (Sept. 28, 2016) at 57. Defense counsel told the court that Fedoruk's pain was "unbearable" and that his biggest concern was getting to a doctor. RP (Sept. 28, 2016) at 57. The court stated that "[g]iven witnesses, jurors who are going to be gone, we don't have any choice but to go forward with your trial." RP (Sept. 28, 2016) at 58. The court also informed Fedoruk that he needed to maintain his composure in the courtroom and told Fedoruk that during the lunch recess the medical staff at the jail would be able to help him with his pain.

The court took an extended lunch recess so that Fedoruk could seek medical attention. After the recess, Fedoruk again requested a continuance, but this time only until the following morning, stating that "sleep and rest for a good chunk of the rest of the day and overnight, that will go a long way toward making tomorrow more tolerable." RP (Sept. 28, 2016) at 59-60. The court denied Fedoruk's request citing concerns over juror availability. The court stated that if it extended the recess, the court would lose jurors, resulting in a mistrial.

Fedoruk then requested to waive his presence at trial. The court engaged Fedoruk in a colloquy to confirm that he wished to waive his presence:

> THE COURT: All right, Mr. Fedoruk, I just want to confirm—and you can stay seated if you wish, that's fine.
>     I want to confirm: It's your desire that you not be present for the balance of trial today; is that right?
> THE DEFENDANT: I agree.
> THE COURT: All right.
>     And you understand you have an absolute right to be here today?
> THE DEFENDANT: Yes. I believe my attorney.

---

[3] The exact nature of the restraints is not apparent from the record on appeal.

> THE COURT: Okay. You have discussed this with your attorney and this is how you wish to proceed; is that right?
> THE DEFENDANT: Yeah. Thank you.
> THE COURT: All right.
>     Then we'll allow Mr. Fedoruk to return to the jail for the balance of the day. We will have you brought over tomorrow morning. I assume that's [sic] your wish is to be back here tomorrow morning?
> THE DEFENDANT: Yeah, thank you, yeah, yeah.
> THE COURT: All right.
>     You're comfortable with the trial proceeding without you this afternoon and your attorney acting on your behalf without you here?
> THE DEFENDANT: Correct, correct.

RP (Sept. 28, 2016) at 62-63. The court then allowed Fedoruk to return to jail for the rest of the afternoon and continued the trial in his absence. The court instructed the jury that it should not consider Fedoruk's absence as "evidence of anything" and that Fedoruk had a right to not be present. RP (Sept. 28, 2016) at 66.

The next morning, on September 29, Fedoruk returned to the courtroom. During a witness's testimony, Fedoruk exclaimed, "Totally wrong. He's lying." RP (Sept. 29, 2016) at 8. As the witness continued, Fedoruk made other verbal but unintelligible outbursts and again claimed the witness was lying. The State then rested and defense counsel asked to address the court. Outside the presence of the jury, defense counsel stated:

> Your Honor, I'm concerned about Mr. Fedoruk and very—he's just very animated this morning, and some reactions to this last witness that the testimony really has been—well, reactions that I haven't seen, up to this point.
>
> I believe he understands me; but, I'm concerned about his—his mood, at this point. I know we are very close to the end of the trial and I'm hoping he can keep it together.

RP (Sept. 29, 2016) at 9. Fedoruk himself then stated, "Because this is not truth. Not truth. I never said my [inaudible] I kill somebody; I never tell my wife; my sister over there is saying things." RP (Sept. 29, 2016) at 9 (alteration in original). The State asserted that it appeared that

Fedoruk was upset about the witness testimony, which was the reason for his disruptive behavior, "not that he's having any difficulty understanding or following the proceedings, or any difficulty assisting Counsel at this time." RP (Sept. 29, 2016) at 10.

After a brief recess and outside the presence of the jury, the court noted that Fedoruk was having a "difficult time" and that at the request of the corrections officers, Fedoruk was placed in leg shackles and a belly chain. RP (Sept. 29, 2016) at 11. Defense counsel told the court that he was concerned about Fedoruk's ability to maintain composure in the courtroom and that he attempted to have a discussion with Fedoruk but was unsuccessful.

Fedoruk then raised concerns about the jury being able to see the restraints. The court then stated that if Fedoruk could maintain his composure, the court would have Fedoruk's belly chains removed. Fedoruk affirmed that he would be able to maintain his composure.

Defense counsel objected to the restraints and stated that any rearranging of the courtroom to accommodate the restraints would be very prejudicial to Fedoruk. Fedoruk added, "[Inaudible] me. Yeah, maybe I'd [inaudible] stark crazy; but, if nobody touch me, I never touch somebody back," and he then apologized. RP (Sept. 29, 2016) at 14 (alteration in original). The court responded that it was going to keep Fedoruk in the leg shackles because his behavior was "very concerning to all." RP (Sept. 29, 2016) at 14.

Defense counsel also informed the court that the interpreters wanted to move away from Fedoruk. The court, over Fedoruk's objection, allowed the interpreters to move.

Before the jury was brought in, Fedoruk asked to use the restroom, and the court instructed the corrections officers to escort Fedoruk to the restroom. The court reported that while using the restroom Fedoruk was "very loud in the back hall and was having some difficulty

9

controlling himself." RP (Sept. 29, 2016) at 16. The court again asked Fedoruk if he would be able to maintain his composure and Fedoruk responded in the affirmative.

At this time, defense counsel informed the court that he was concerned about Fedoruk's competency and his ability to assist in his defense. Counsel stated that before the last break Fedoruk was "chanting stuff that is some indecipherable Russian" and that when discussing the testimony of the last witness, Fedoruk's reaction was "pure anger." RP (Sept. 29, 2016) at 16. Defense counsel then said he was "concerned about [Fedoruk's] competence, at this point. I hate to do that, but I think that that's—I think we're—I'm very concerned that I've known him for two years, I'm very concerned about his behavior." RP (Sept. 29, 2016) at 17.

The court then responded:

At this point, based on my observations, Mr. Fedoruk is certainly responsive to what he is hearing in the courtroom and can converse with his attorney; but, he's also emotionally upset. But I—at least at this point I don't see this rising to the level of a competency concern.

In addition, we are now at the point where Counsel advises me we are very close to completion of all the testimony after almost two weeks of trial. Mr. Fedoruk is currently calm, and I think we can continue to proceed.

I'll leave it to Counsel and his client whether he wishes to proceed with his presence in the courtroom or not in the courtroom. If he is in the courtroom, he does need to maintain his composure, and if you can't do that, I won't have any choice but to have him removed from the courtroom; complete the balance of the testimony; preparation of jury instructions.

After that, we'd be providing those instructions to the jury and closing arguments. I know Mr. Fedoruk wants to be present for those parts of the proceedings, but it's contingent on his behavior.

RP (Sept. 29, 2016) at 17-18. Fedoruk then removed his interpretive device from his head.

The proceedings continued and after one more witness, the defense then rested and the court inquired whether Fedoruk wanted to be present while the jury instructions were being

finalized. Fedoruk began to cry and defense counsel stated that Fedoruk would take the

opportunity to get some rest. The court then engaged in a colloquy with Fedoruk:

> THE COURT: Mr. Fedoruk, do you understand you can be here while we go over these instructions. It's my understanding that you would prefer not to be; allow your attorneys to handle that; and you'll take a chance to give your back a break; is that right?
> [Fedoruk]: No more witnesses?
> [DEFENSE COUNSEL]: No more witnesses.
> [Fedoruk]: No, no.
> Today and tomorrow; done?
> [DEFENSE COUNSEL]: Done.
> [Fedoruk]: Today, done?
> [DEFENSE COUNSEL]: Yes.
> [Fedoruk]: [lnaudible].
> [DEFENSE COUNSEL]: Yes
> [Fedoruk]: You're sure? They told me tomorrow.
> [DEFENSE COUNSEL]: No, I'm sure we're going to be done today.
> [Fedoruk]: Okay, if it's done, then I like stay.
> [DEFENSE COUNSEL]: You'd like to stay? Okay.
> THE COURT: All right.

RP (Sept. 29, 2016) at 27-28 (alteration in original).

> Fedoruk began speaking in Russian and the following exchange took place:

> THE COURT: All right.
> (Defendant speaking in Russian.)
> THE INTERPRETER: (After translation communication with the Defendant:) He says that everybody knows [inaudible].
> THE COURT: I'm sorry, I couldn't hear the interpreter?
> THE INTERPRETER: He just said—
> (Defendant continues speaking in Russian.)
> THE INTERPRETER:—the relatives they were testifying if they will come to the courtroom [inaudible].
> THE COURT: Okay, so, Mr. Fedoruk—
> (Defendant speaking in Russian.)
> THE COURT: Mr. Fedoruk, I need you to be quiet while we're doing this; you understand?

RP (Sept. 29, 2016) at 28-29 (alterations in original). The court ordered that Fedoruk be placed

back in restraints at a corrections officer's request.

While the court and counsel were discussing jury instructions, Fedoruk requested to use the restroom and said that he had a strain in his back. The court informed Fedoruk that he would need to stay until the court had finished with jury instructions but that Fedoruk would soon be able to go back to the jail for lunch. Fedoruk then said "I—actually, I refuse to go to lunch" but then said he understood and was just "confused." RP (Sept. 29, 2016) at 32-33. After preparing the jury instructions, the court took a lunch recess.

After the recess, the court continued to finalize the instructions and Fedoruk continued speaking in Russian and also saying unintelligible things. The corrections officers restrained Fedoruk again, chaining him to the table. The court then reported that Fedoruk had some problems over the lunch hour in that he had taken his cell apart, but that he had received medication and appeared to be doing "somewhat better." RP (Sept. 29, 2016) at 38. Fedoruk stated the name of the medication he took. Fedoruk then pointed to his head and stated "I've got this beeping . . . instead." RP (Sept. 29, 2016) at 38.

With the jury present, the court began to read the instructions to the jury. Soon thereafter, Fedoruk collapsed onto the floor. The court removed the jury from the courtroom. Fedoruk began speaking unintelligibly, crying, and not responding. Defense counsel informed the court that Fedoruk slid down his chair and hit his head on the table. Fedoruk then stated that he wanted to go to sleep and then began shouting in Russian. He stated that he lost consciousness and stated that he could not get up and that he was "done." RP (Sept. 29, 2016) at 49.

The court stated that it was "willing to give Mr. Fedoruk one more opportunity to sit through the balance of the trial." RP (Sept. 29, 2016) at 50. Fedoruk then began singing and

chanting in an unintelligible language. The trial court ordered Fedoruk's removal from the courtroom and ordered the officers to hold him in an area outside the courtroom to see if he improved. Fedoruk continued to speak and chant, at one point stopping to apologize. Fedoruk asked for a wheelchair and stated that he could not walk and then began to yell unintelligibly.

As corrections officers were attempting to get Fedoruk off the floor, a spectator began speaking to Fedoruk in Russian and Fedoruk began yelling in Russian. Fedoruk continued yelling until he was removed from the courtroom. The interpreter then informed the court of what Fedoruk had been saying:

> Well, first he was praying in poems, so it's not any language, it's just a made-up language which he prays in, and that's according to his sisters. We couldn't make sense of it.
>
> And then he was saying I'm going to call FBI [(Federal Bureau of Investigation)]you were not getting to help me, you broke my back, it hurts. That's pretty much the gist of it.

RP (Sept. 29, 2016) at 53. The spectator, identified by the interpreter as Fedoruk's sister, stated that every time Fedoruk starts "losing it, that's how he behaves." RP (Sept. 29, 2016) at 53.

The State then asserted that Fedoruk, through his behavior, had "effectively waived his presence" at trial for the remainder of day. RP (Sept. 29, 2016) at 53. Defense counsel responded that Fedoruk was not competent and that Fedoruk's behavior was not something the "Court should base exclusion on" and stated that the attorney was unable to "redirect" Fedoruk's behavior. RP (Sept. 29, 2016) at 54. The court then stated:

> Well, obviously we were at a point a little more than halfway through the giving of instructions and closing argument. It's a point where the Defendant's participation, if any, obviously is minimal.
>
> Mr. Fedoruk has demonstrated that at this point he's either won't *or can't*, and I don't say that in any pejorative fashion I just don't know which, maintain his

> composure sufficient to allow the case to go forward with him still in the room. So, I would find that he's waived his presence at this time; and that there's no meaningful participation from him going forward.
>
> Given those two facts, I'll allow the case to proceed without Mr. Fedoruk present. After I complete instructions, I'd ask that the officer advise us if he's improved or not, or advise me and if at any point you think he's calmed down sufficiently to come back into court please let me know.

RP (Sept. 29, 2016) at 54-55 (emphasis added). A corrections officer informed the court that Fedoruk was lying down in the holding cell not saying anything.

Defense counsel then stated that "under the circumstances" he was moving for a mistrial. RP (Sept. 29, 2016) at 55. The court denied the motion and reasoned that "to the extent there's been any error or problem, it's certainly has come from the behavior of the Defendant, whether he can or can't control that, whichever situation it is, I don't think it can form the basis for a mistrial." RP (Sept. 29, 2016) at 55.

After closing arguments, the court provided an update on Fedoruk and stated that Fedoruk "was lying down on the floor in the holding cell, refusing to get up; speaking in a very loud voice, indicating that he wished to return to the jail." RP (Sept. 29, 2016) at 94. The court then discussed whether Fedoruk could be present during the presentation of the verdict. The court stated that once the jury reached a verdict, a corrections officer would check on Fedoruk and advise the court of Fedoruk's situation and the court would then make a "decision based on that whether or not to bring him over." RP (Sept. 29, 2016) at 95-96. Before the recessing for the day, a corrections officer informed the court that when Fedoruk was transported to the jail, smelling salts were needed to "wake" Fedoruk up and to get him out of the vehicle. RP (Sept. 29, 2016) at 96.

14

The next morning, the jury reached a verdict. The court asked the jail to bring Fedoruk back to the courthouse and the jail advised that Fedoruk spent the night without sleeping and "mostly practicing boxing moves." RP (Sept. 30, 2016) at 99. The court then took testimony from an officer who testified that, "[w]e had officers go to his cell, let him know that there was a verdict we needed to bring him over for court. He's basically refusing to come over and he's not following directions at all this morning." RP (Sept. 30, 2016) at 98. The officer also informed that force would need to be used to bring Fedoruk to the courtroom.

The court then took the verdict in Fedoruk's absence. The State again asserted that Fedoruk "waived his presence by his inability to follow directions; his unwillingness to follow directions; and unwillingness to maintain behavior as appropriate." RP (Sept. 30, 2016) at 100. Defense counsel disagreed and asserted that he did not think Fedoruk was competent and that he was concerned for Fedoruk's safety. The court explained that there was no purpose in bringing Fedoruk back to the courtroom and that "he wouldn't otherwise have any active participation in this process and would have no basis or opportunity to assist in his own defense in the course of accepting the verdict, in any event." RP (Sept. 30, 2016) at 100-101.

The jury found Fedoruk guilty of second degree murder. After the jury exited the courtroom, the court questioned counsel as to the next steps. Defense counsel stated, "[W]e're still questioning competency. I think sentencing is a critical proceeding. I'm asking that he be evaluated." RP (Sept. 30, 2016) at 106-107. The court responded:

> As kind of a recap, while Mr. Fedoruk was having difficulties over the course of the last couple days of the trial, it ultimately led to putting the leg shackles on him as kind of a last resort, and making sure the jury couldn't see those.
>
> Conduct that might have caused me to question his competency at all really didn't occur until we were reading jury instructions. At that point, I didn't have a

15

> basis to think that he was not competent. Based on his behavior subsequent, including his behavior overnight in the jail and given the need for him to be able to consult with his attorneys pending sentencing, I think we have enough information, at this point, to question competence.
>
> And I don't think it's in the Defendant's or the State's or the County's best interest to delay until another hearing starting that process. So, at this point in time I am going to order an evaluation to determine the Defendant's competence to continue to stand trial and to be sentenced.

RP (Sept. 30, 2016) at 107. Thereafter the court ordered that Fedoruk undergo a competency evaluation and entered a forced medication order.

During the week immediately following trial, a psychologist evaluated Fedoruk at the jail. The psychologist noted that he saw Fedoruk through his cell because he was too, "acutely impaired and mentally ill." CP at 381. The psychologist reported that Fedoruk had not slept and not taken medication. During the evaluation Fedoruk muttered with pressured speech and stated that he had seen Jesus. The psychologist concluded that Fedoruk was, "in an acute psychotic, agitated and confused state, and at that point not competent to proceed with his sentencing." CP at 381.

After another competency evaluation in January 2017, an evaluator stated that nothing impaired Fedoruk's capacity to consult with his attorney or his understanding and recommended that Fedoruk return to court for sentencing. The court then entered an order of competency and conducted a sentencing hearing. The court sentenced Fedoruk to 216 months of confinement. Fedoruk appeals.

ANALYSIS

Fedoruk argues that the trial court failed to order a competency evaluation when there was reason to doubt his competency. Fedoruk argues that he was not competent and could not

16

assist in his own defense and asserts that the trial court failed to consider his mental health history and failed to give deference to his counsel's concerns about his competence. Fedoruk also argues that the trial court applied the wrong standard in determining whether he needed to be evaluated for competency. We agree and hold that the trial court abused its discretion when it failed to order a competency evaluation.

## I. COMPETENCY

A. *Legal Principles*

Criminal defendants have a constitutional right not to be tried while incompetent. *In re Fleming*, 142 Wn.2d 853, 861, 16 P.3d 610 (2001). RCW 10.77.050 codifies this right by preventing an incompetent person from being tried, convicted, or sentenced so long as the incapacity continues. A defendant is "incompetent" if he or she "lacks the capacity to understand the nature of the proceedings against him . . . or to assist in his . . . own defense as a result of mental disease or defect." RCW 10.77.010(15). The test for competency to stand trial has two parts: (1) whether the defendant understands the nature of the charges and (2) whether he is capable of assisting in his defense. *Fleming*, 142 Wn.2d at 861-62. The mere existence of a mental disorder or the existence of delusions does not prevent a defendant from being competent. *See State v. Smith*, 74 Wn. App. 844, 850, 875 P.2d 1249 (1994).

The trial court is required to order a competency evaluation when there is reason to doubt a defendant's competency. RCW 10.77.060(1)(a). We differentiate the determination of a reason to doubt competency from an actual determination of competency. *City of Seattle v. Gordon*, 39 Wn. App. 437, 441, 693 P.2d 741 (1985). The court must make the threshold

determination that there is a reason to doubt competency before a hearing to determine competency is required. *Gordon*, 39 Wn. App. at 441.

We review a trial court's decision on whether to order a competency examination for an abuse of discretion. *Fleming*, 142 Wn.2d at 863. The trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *State v. Walker*, 185 Wn. App. 790, 800, 344 P.3d 227 (2015). Once the trial court makes a determination that a defendant is competent, it need not revisit competency unless "new information" exists that shows the defendant's mental condition has changed since being found competent to stand trial. *State v. Ortiz*, 119 Wn.2d 294, 301, 831 P.2d 1060 (1992).

There are no fixed signs which require a competency hearing, but the factors the court may consider include, medical and psychiatric reports, personal and family history, defendant's appearance, demeanor, conduct, and past behavior. *Fleming*, 142 Wn.2d at 863. The trial court should also give considerable weight to the defense counsel's opinion regarding a defendant's competency. *State v. Harris*, 122 Wn. App. 498, 505, 94 P.3d 379 (2004).

Here, Fedoruk had been found competent to stand trial. Thus, our examination focuses on the signs that his mental condition had so changed since being found competent to stand trial so as to require another competency evaluation. *Ortiz*, 119 Wn.2d at 301. To do so, we examine the same factors the trial court considers when initially determining if it has reason to doubt a defendant's competency.

B.    *Medical and Psychiatric Reports*

Fedoruk's medical and psychiatric reports showed that his mental illness spanned years. The reports also showed that Fedoruk had a history of rapid decompensation and medication

noncompliance. The trial court was aware of Fedoruk's lengthy medical history which detailed certain behaviors Fedoruk exhibited during psychotic breaks, such as screaming in another language, not being redirectable, and not making sense. Moreover, Fedoruk's medical reports contained information that Fedoruk's "inability to sleep was known to him as a precursor for a manic episode including paranoid delusions." CP at 88. Fedoruk's available psychiatric reports documented that Fedoruk experienced a manic episode after a period of not sleeping and not taking medication. Fedoruk was under a forced medication order and twice during trial Fedoruk brought the issue of his lack of sleep to the court's attention.

C.    *Family History*

In 2002 Fedoruk's family reported him to the police on account of Fedoruk threatening them. After the threats, a doctor evaluated Fedoruk and prescribed him antipsychotic medication. Fedoruk's family again reported him to the police in 2010 and WSH then admitted Fedoruk for psychiatric treatment.

D.    *Conduct and Demeanor*

Starting on the second to last day of trial, Fedoruk exhibited extreme behavior that was similar to behavior he displayed in past mental breakdowns. His behavior became increasingly questionable as the trial proceeded and Fedoruk eventually stopped responding to his attorney altogether.

Fedoruk began chanting and screaming in an unintelligible language and had to be physically restrained, in increasing fashion, for him to maintain composure. He slid out of his chair, collapsed onto the floor, screamed at a spectator, and referenced calling the FBI, all the while continuing to chant in a fake language. Fedoruk's sister stated that the type of behavior

19

Fedoruk displayed was the same type of behavior Fedoruk displayed before "losing it." RP (Sept. 29, 2016) at 53.

Additionally, immediately after trial, Fedoruk underwent an evaluation. The evaluating psychologist was unable to gain access to Fedoruk outside of his jail cell because Fedoruk was "acutely impaired and mentally ill." CP at 381. The psychologist deemed Fedoruk not competent to undergo sentencing.

E.  *Counsel's Opinion*

At trial, defense counsel informed the court of his concern with Fedoruk's "mood" and competency multiple times toward the end of the trial. RP (Sept. 29, 2016) at 9. Defense counsel also expressed that he was concerned about Fedoruk's ability to assist in his defense. On September 29, defense counsel voiced his concern about Fedoruk's competence and stated that he had known Fedoruk for two years and was worried about his behavior. Counsel reported that Fedoruk was, "chanting stuff that is some indecipherable Russian." RP (Sept. 29, 2016) at 16. Later that same day, after Fedoruk slid off the chair in the courtroom and began singing in an unintelligible language, counsel again told the court about his concerns and stated that Fedoruk was not competent and that he could not be "redirect[ed]." RP (Sept. 29, 2016) at 54.

Although each of the four factors above may not individually have required the court to order a competency evaluation, taken together, a combination of the above factors create reason to doubt Fedoruk's competency. *Fleming*, 142 Wn.2d at 863. In light of Fedoruk's mental health history, his family history, his conduct at trial, his counsel's opinion and other information properly before the court, it is clear that Fedoruk showed signs of mounting decompensation enough to create doubt as to his competency.

F.      *Trial Court Did Not Consider Correct Factors*

In evaluating the need for a competency evaluation, the trial court must consider (1) whether the defendant understands the nature of the charges and (2) whether he is capable of assisting in his defense. *Fleming*, 142 Wn.2d at 861-62. As noted above, in evaluating the need for a competency evaluation, the trial court may consider the statements of counsel, medical and psychiatric reports, personal and family history, defendant's appearance, demeanor, conduct, and past behavior. *Fleming*, 142 Wn.2d at 863.

Here, as Fedoruk's behavior deteriorated, and despite Fedoruk's mental health history, the trial court failed to consider whether Fedoruk was competent. Instead, the trial court focused on whether Fedoruk had waived his presence at trial due to his disruptive behavior. Multiple times throughout trial, the court warned Fedoruk that he needed to maintain his composure to remain in the courtroom. After Fedoruk first started chanting in an indecipherable language the court placed him in restraints, opining that Fedoruk was not having competency issues but was "emotionally" upset. RP (Sept. 29, 2016) at 17. The court also stated that Fedoruk's presence in the courtroom was contingent on his behavior. The court additionally gauged Fedoruk's behavior by whether he was "calm" rather than whether he was exhibiting signs of mental decompensation. RP (Sept. 29, 2016) at 17. Also, after Fedoruk's removal from the courtroom, the court expressly stated that it was unclear as to whether Fedoruk won't "*or can't*" control his behavior. RP (Sept. 29, 2016) at 55 (emphasis added). Rather than address any competency concerns based on that uncertainty, the court decided that it would continue to check on Fedoruk to see if his behavior stabilized such that he would not disrupt the remainder of his trial.

21

No. 49975-4-II

It is apparent that the trial court reviewed Fedoruk's behavior under the standard for determining whether Fedoruk waived his right to be present at trial rather than analyzing whether a competency evaluation was necessary. Because there were clear signs that Fedoruk's mental condition had significantly deteriorated since being found competent to stand trial, and because the trial court applied the wrong standard in evaluating Fedoruk's behavior, the court abused its discretion when it failed to order a competency evaluation during trial.

Because the trial court failed to order a competency evaluation when there was reason to doubt Fedoruk's competency and because the court applied the wrong standard to assess Fedoruk's behavior, the trial court abused its discretion.

We reverse and remand to the trial court for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Bjorgen, J.

Sutton, J.

22