

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE **AUG 0 8 2019**

Fau hurst, CQ.
*CHIEF JUSTICE*

This opinion was
filed for record
at 8a~on August 8, 2019

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 96653-2 |
| Petitioner, | ) | |
| v. | ) | En Banc |
| MATTHEW SEAN McCARTHY, | ) | |
| Respondent. | ) | |
| In the Matter of the Personal Restraint of | ) | |
| MATTHEW SEAN McCARTHY, | ) | |
| Petitioner. | ) | Filed     **AUG 0 8 2019** |

JOHNSON, J.—This case concerns two issues: whether under RCW

10.77.060(1)(a) the trial court erred, during trial, in not ordering a third

competency hearing after a jury had previously found the defendant competent to

stand trial, and what deference, if any, is given to the trial court when it does not

sua sponte order a competency hearing. Matthew McCarthy's appellate counsel[1] contends that McCarthy's mental health deteriorated and that the trial court erred in not sua sponte ordering another competency evaluation either before or during McCarthy's third strike burglary trial. A jury found McCarthy guilty of first degree burglary, and he was sentenced to life in prison as a most persistent offender. The Court of Appeals engaged in what the parties characterize as an independent review[2] of the record, held that the trial court should have ordered another evaluation, and vacated the conviction. The State petitioned for review. We reverse the Court of Appeals. The proper standard of review is abuse of discretion, and the trial court did not abuse its discretion when it did not sua sponte order a competency evaluation based on the evidence presented during the criminal proceedings. We reverse and remand to the Court of Appeals for consideration of the remaining issues raised in McCarthy's personal restraint petition.[3]

---

[1] We refer to McCarthy and his counsel separately as McCarthy has, throughout the proceedings, vigorously contended that he is competent, in disagreement with his competency trial counsel and appellate counsel. McCarthy's burglary trial counsel never indicated he questioned McCarthy's competence to stand trial.

[2] The Court of Appeals does not specify the standard of review it used, but the parties agree it engaged in an independent review, so we refer to it as such throughout the opinion.

[3] Because the Court of Appeals reversed the conviction based solely on the failure to order a competency hearing, it did not resolve the other issues raised on appeal.

FACTS AND PROCEDURAL HISTORY

On September 21, 2014, McCarthy approached a stranger's home under a mistaken belief that he would find his ex-wife within the home. He forced his way into the home and pushed the occupant against the wall. He returned twice the next evening: the first time once again looking for his ex-wife and the second time looking for his cell phone. Out of these events, the State charged McCarthy with first degree burglary predicated on assault. The State notified him that this was a most serious offense and that he was facing life in prison without parole due to his criminal history.

Prior to McCarthy's arraignment, his public defender, Kari Reardon, expressed to the court that she had reason to doubt McCarthy's competency to stand trial. The trial court ordered a competency evaluation and stayed the proceedings. McCarthy objected to the initiation of competency proceedings against his will because he believed himself to be competent. Dr. Daniel Lord-Flynn conducted an evaluation and diagnosed McCarthy with bipolar disorder with nonbizarre delusions,[4] and various substance abuse disorders. Dr. Lord-Flynn initially found McCarthy had a detailed understanding of the legal proceedings

---

[4] "Nonbizarre delusions" are delusions that could be real but in actuality are not, such as "the FBI is surveilling me." In contrast, "bizarre delusions" are delusions of things that could not happen, such as "aliens invaded and have taken over my body." *See* 2 Verbatim Report of Proceedings (Jan. 27, 2016) at 383.

3

against him and the ability to assist in his own defense, and he tentatively believed McCarthy was competent to stand trial. After receiving more information from attorney Reardon, Dr. Lord-Flynn changed his opinion and concluded that McCarthy was incompetent to stand trial as he could not assist in his own defense. Based on Dr. Lord-Flynn's opinion, the trial court ordered a 90-day competency restoration period.

McCarthy maintained he was competent and requested a second opinion, which resulted in the appointment of Dr. Debra Brown. Dr. Brown evaluated McCarthy and found him incompetent to stand trial because of his inability to work with Reardon. After the first 90-day restoration treatment, Dr. Lord-Flynn changed his conclusion and found McCarthy capable of assisting in his own defense but only with another attorney. The trial court held another hearing and, based on the conflicting evidence, ordered a second 90-day competency restoration period.

After the second restoration treatment, Dr. Lord-Flynn, with Dr. Brown observing, evaluated McCarthy again. At this interview, McCarthy spoke about the case and his defense, indicated he understood the charges and what the prosecutor needed to prove, and again expressed that he did not trust Reardon to be his attorney. Dr. Lord-Flynn added a diagnosis of antisocial personality disorder but concluded McCarthy was competent to stand trial. The trial court then ordered a jury trial to determine if McCarthy was competent.

A different judge presided over the competency trial. During that trial, McCarthy testified that he believed he was competent but agreed there may have been reasons to doubt competency earlier in the case. Both experts testified about their opinions, including that they both found McCarthy suffered from bipolar disorder with paranoid, nonbizarre delusions and irrational thought, but they differed as to whether he was competent. Dr. Brown discussed McCarthy's conspiracy theories and inability to trust his attorney. She opined that because McCarthy's version of the facts did not make sense, that he thought others were out to get him, and that his asserted defense was not viable, he could not assist his attorney in his own defense and, thus, was not competent. She also testified that while testifying that day, McCarthy still exhibited signs of paranoia and delusions.

Dr. Lord-Flynn disagreed, testifying that McCarthy was calm when he testified and his behavior was dramatically different from previous interactions. Dr. Lord-Flynn explained that McCarthy's bipolar disorder was being treated, he was taking his medications, and Dr. Lord-Flynn had found him competent. He testified McCarthy was intelligent and at the time was able to understand the consequences of his different legal options and could assist in his defense. The jury found McCarthy competent to stand trial. At his arraignment following the verdict, McCarthy pleaded not guilty. The court then allowed Reardon to withdraw as counsel and agreed to appoint another public defender.

At McCarthy's next hearing, in front of the same judge as the competency trial, the court heard McCarthy's motion to proceed pro se with the potential to have Dennis Dressler as standby counsel. McCarthy indicated he wanted to proceed pro se because of governmental misconduct and harassment within the jail. The trial court inquired into McCarthy's education, familiarity with the law, and his understanding of the consequences. The court asked if Dressler had any input. Dressler indicated that he had read McCarthy's filings with the court and stated that he had "seen a lot worse" from lawyers and that McCarthy had been diligent in learning how to handle the matters. 4 Verbatim Report of Proceedings (VRP) (May 13, 2016) at 709. The trial court granted McCarthy's request, finding McCarthy knowingly, voluntarily, and intelligently waived his right to an attorney, and Dressler was appointed in limited scope as standby counsel. The State raised concerns about delusions resurfacing based on McCarthy's beliefs that his ex-wife was working in the county jail mail room and that his jailers were out to get him. The judge stated,

> I understand the State's concern. We went through a whole competency trial. You were found to be competent. In listening to you today, you don't sound a whole lot different than you did at the competency trial. You seem to understand the process, the procedure, where you are in this case, and it seems that you have some defense. Whether or not it's a defense that other people would choose is a separate question.
> I think what we'll do is have you come back to check on you, though, to make sure you're doing okay. If there does appear to be

issues of competency, then we might have to start this whole thing over again.

4 VRP (May 13, 2016) at 716.

In subsequent proceedings, in front of different judges, McCarthy continued to express delusional beliefs and file corresponding motions. Although McCarthy indicated that the court was to monitor his mental health, no one questioned McCarthy's competency. In a petition for a writ of habeas corpus, McCarthy alleged his jailers were harming him with toxic fumes, prohibiting him from reviewing his discovery. The court held a later hearing with jail staff testifying to address McCarthy's allegations within the jail but twice delayed ruling on the petition for writ of habeas corpus. The record does not contain a subsequent hearing on these allegations of the toxic fumes.

At a pretrial hearing, the parties discussed the witnesses McCarthy wanted to call and why, among other pretrial issues. McCarthy continued to allege that there was a conspiracy between his ex-wife and the burglary victim and that there had been governmental misconduct. He also had rejected the State's plea deal, which would have allowed him to avoid persistent offender status by pleading guilty to a nonstrike offense.

At this point, the State again alerted the court that there may be "slippage" due to McCarthy's delusions about the toxic fumes and other governmental

misconduct. VRP (July 15, 2016) at 96. The trial court expressed concerns about McCarthy's ability to represent himself, and McCarthy then agreed to allow Dressler to be his counsel for the trial. Neither the trial court nor the parties questioned McCarthy's competence.

The case proceeded to trial where McCarthy testified and described the facts from his point of view. Based on the trial record, McCarthy appeared coherent in his recitation and there is no indication of any irrational behavior or outbursts. When he arrived for the reading of the verdict, McCarthy wore "jail clothes" although he was told he could wear "street clothes." 2 VRP (Sept. 21, 2016) at 253. Dressler stated, "Although I would prefer him being in civilian attire, I have to assume Mr. McCarthy knows what he's doing. *I never have had any thoughts otherwise.*" 2 VRP (Sept. 21, 2016) at 254 (emphasis added). McCarthy was convicted of first degree burglary and sentenced to life as a persistent offender.

McCarthy filed a personal restraint petition in the Court of Appeals, again alleging governmental misconduct. Shortly after, Dressler filed a notice of appeal. The Court of Appeals consolidated the cases. In her Court of Appeals brief, McCarthy's appellate counsel alleged that McCarthy's delusions about governmental misconduct and the relationship between his ex-wife and the victim were a sufficient basis to doubt his competency and that the trial court abused its discretion in not sua sponte ordering another competency hearing. In his briefing,

McCarthy still contended he was competent. *See* Statement of Additional Grounds for Review at 18 (Wash. Ct. App. No. 34859-8-III (2017)) ("Incompetence is not the real issue here.").

The Court of Appeals, based on its review of the record, agreed that reasons existed to doubt McCarthy's competency, vacated his conviction, and remanded to the trial court. *See State v. McCarthy*, 6 Wn. App. 2d 94, 143-44, 429 P.3d 1086 (2018). The State petitioned for review, arguing that the Court of Appeals applied the wrong standard of review and the proper standard of review should be abuse of discretion, and that the trial court did not abuse its discretion; further, even if error occurred, the proper remedy is to remand for an evidentiary hearing on whether McCarthy was competent at the time of trial. We granted review. *State v. McCarthy*, 192 Wn.2d 1023, 435 P.3d 265 (2019).

## ANALYSIS

The due process clause of the Fourteenth Amendment to the United States Constitution guarantees an accused the fundamental right not to stand trial if he is legally incompetent. *State v. Ortiz-Abrego*, 187 Wn.2d 394, 402-03, 387 P.3d 638 (2017). This principle is codified under RCW 10.77.050, which states, "No incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." Under the statutory definition, "'[i]ncompetency' means a person lacks the capacity to understand the nature of

9

the proceedings against him or her or to assist in his or her own defense as a result of mental disease or defect." RCW 10.77.010(15).

"Chapter 10.77 RCW governs the procedures and standards trial courts use to [assess] the competency of defendants to stand trial." *State v. Coley*, 180 Wn.2d 543, 551, 326 P.3d 702 (2014).

Under Washington's statutory scheme,

> [*w*]*henever* . . . there is reason to doubt [the accused's] competency, the court on its own motion or on the motion of any party shall either appoint or request the secretary to designate a qualified expert or professional person, who shall be approved by the prosecuting attorney, to evaluate and report upon the mental condition of the defendant.

RCW 10.77.060(1)(a) (emphasis added). When making the determination of whether a competency hearing is necessary, the factors the trial court considers include the defendant's behavior, demeanor, appearance, personal and family history, and psychiatric reports. *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 863, 16 P.3d 610 (2001). In addition, we have recognized that the trial court should afford "considerable weight" to a defense attorney's opinion regarding his or her client's competency. *State v. Lord*, 117 Wn.2d 829, 901, 822 P.2d 177 (1991).

Here, the trial court did not sua sponte refer McCarthy for an additional competency hearing after a jury found him competent. We must initially determine the standard of review to review the trial court's decision. Although the briefing at

times characterizes this issue as challenging the trial court's "decision,"[5] no such

decision exists. Instead, it is the trial court's failure to order a new competency

hearing, although it makes no substantive difference to the analysis.

1.    Standard of Review

The parties disagree as to whether appellate courts should give deference to

the trial court when a trial court judge does not order a competency evaluation or

hearing where no request is raised. The State contends that the proper standard of

review is abuse of discretion. McCarthy's counsel instead urges that the appellate

court engage in an independent review of the record, given that this is a matter of

constitutional significance.

In *State v. Sisouvanh*, 175 Wn.2d 607, 620, 290 P.3d 942 (2012), to address

whether Sisouvanh's competency evaluation was adequate, we first needed to

determine the appropriate standard of review. In holding that the standard of

review for the adequacy of a competency evaluation is abuse of discretion, we

noted that "various decisions by the trial court regarding competency are subject to

an abuse of discretion standard." *Sisouvanh*, 175 Wn.2d at 620. We also explained,

---

[5] *See, e.g.*, Appellant's Opening Br. at 8-9 (Wash. Ct. App. No. 34859-8-III (2017)) ("Appellate courts will review a trial court's decision about a defendant's competency or, as here, its *decision not to evaluate* whether a defendant's competency continues, for abuse of discretion." (emphasis added)); Suppl. Br. of Pet'r at 2 ("Whether the trial court's *decision* not to refer Matthew McCarthy for additional competency evaluations was within its discretion?" (emphasis added)).

> An abuse of discretion standard often is appropriate when (1) the trial court is generally in a better position than the appellate court to make a given determination, (2) a determination is fact intensive and involves numerous factors to be weighed on a case-by-case basis, (3) the trial court has more experience making a given type of determination and a greater understanding of the issues involved, (4) the determination is one for which "no rule of general applicability could be effectively constructed,", and/or (5) there is a strong interest in finality and avoiding appeals.

*Sisouvanh*, 175 Wn.2d at 621 (citations omitted) (quoting *In re Parentage of Jannot*, 149 Wn.2d 123, 127, 65 P.3d 664 (2003)). As in *Sisouvanh*, all of these factors support applying an abuse of discretion standard for failure to sua sponte order another competency hearing where no motion or request is made for another hearing.

Similarly, in *Fleming* we applied the abuse of discretion standard to a failure to order a competency hearing. Under that standard, we found the judge did not err in not ordering a competency evaluation where the "trial judge did not see any irrational behavior in the courtroom, nor were there any psychiatric reports given to the trial court judge." 142 Wn.2d at 863. We have also applied the abuse of discretion standard to a trial court's decision whether defense counsel has met the threshold "reason to doubt . . . competency" such that a trial court must order a competency hearing, affirming the trial court's decision that counsel had not met the threshold. *Lord*, 117 Wn.2d at 904.

12

Applying the reasoning from our cases, we hold that whether a trial court should have sua sponte ordered a competency evaluation is also reviewed for abuse of discretion.

2. Discretion To Order Additional Competency Hearings

Applying an abuse of discretion standard, a reviewing court will find error only when the trial court's decision is manifestly unreasonable or is based on untenable grounds. *Sisouvanh*, 175 Wn.2d at 623. Although the appellate court reviews the relevant record, it does so not to come to its own conclusions; the focus is to determine if the trial court's exercised discretion was reasonable and tenable. Therefore, in the present case, if the issue of competency is "'fairly debatable,'" failure to order a subsequent evaluation does not violate RCW 10.77.060, and the trial court did not abuse its discretion. *Sisouvanh*, 175 Wn.2d at 623 (internal quotation marks omitted) (quoting *Walker v. Bangs*, 92 Wn.2d 854, 858, 601 P.2d 1279 (1979)).

RCW 10.77.060(1)(a) requires the trial court to order a competency hearing whenever there is a reason to doubt competency. This requirement continues even after a determination of competency. However, once there has been a determination that a defendant is competent to stand trial, a trial court need not revisit the issue of competency unless some objective incident or event occurs where the court is provided with new information that indicates a significant

13

change[6] in the defendant's mental condition. *State v. Ortiz*, 119 Wn.2d 294, 301, 831 P.2d 1060 (1992) (plurality opinion). The Court of Appeals has similarly found that a reason to doubt is "not definitive, but vests a large measure of discretion in the trial [court]." *City of Seattle v. Gordon*, 39 Wn. App. 437, 441, 693 P.2d 741 (1985).

Washington courts have found that a trial court errs in not ordering a competency evaluation when there is significant evidence that the defendant is not competent, especially where the record includes evidence from expert witnesses and defense counsel. For example, in *State v. Marshall,* 144 Wn.2d 266, 279, 27 P.3d 192 (2001), we vacated Marshall's guilty plea because of the "ample evidence" before the court that called his competency into question. In that case, in addition to the motion to vacate the plea due to incompetency, Marshall provided the court with expert testimony indicating that Marshall suffered from a high level of brain atrophy, below average intelligence, and diagnoses of bipolar disorder,

---

[6] The Court of Appeals adopted a California rule that requires another competency hearing after a determination of competency only when there is a "substantial change of circumstances or new evidence presented casting serious doubt on the validity of the prior finding of the defendant's competency." *McCarthy*, 6 Wn. App. 2d at 135-36 (citing *People v. Mendoza*, 62 Cal. 4th 856, 884, 365 P.3d 297, 198 Cal. Rptr. 3d 445, *cert. denied*, 137 S. Ct. 111 (2016); *People v. Medina*, 11 Cal. 4th 694, 734, 906 P.2d 2, 47 Cal. Rptr. 2d 165 (1995)). The Court of Appeals adopted this rule in part because "substantial change" is, in their view, the same as "significant change" from our plurality decision in *Ortiz. McCarthy*, 6 Wn. App. 2d at 136. There is no need to adopt an out of state rule when our case law provides a persuasive rule that is virtually indistinguishable.

depression, and paranoid schizophrenia. One expert testified that Marshall did not understand he could go to prison if he pleaded guilty. Another witness testified that Marshall stated he did not intend to kill the victim, yet he still pleaded guilty to premeditated murder. The trial court denied the motion despite finding Marshall had a mental impairment. We held that given the substantial evidence calling Marshall's competency into question when he pleaded guilty, the trial court erred in not ordering a competency hearing or granting the motion to vacate Marshall's guilty plea. *Marshall*, 144 Wn.2d at 281.

Similarly, in *State v. Fedoruk,* 5 Wn. App. 2d 317, 339-40, 426 P.3d 757 (2018), *review denied*, 192 Wn.2d 1012 (2019), the Court of Appeals reversed Fedoruk's conviction when new information arose during trial that brought competency into question. Fedoruk had been found to be competent after many months of concerning behavior. However, at trial, Fedoruk began exhibiting "extreme behavior that was similar to behavior he displayed in past mental breakdowns." *Fedoruk*, 5 Wn. App. 2d at 337. This included screaming in an unintelligible language, the need to be increasingly physically restrained due to his inability to remain composed, interrupting witnesses, collapsing on the floor, and other disruptive behaviors. At first, Fedoruk's counsel expressed concern about Fedoruk's mood, but as the trial went on, counsel moved for a mistrial based on what was happening in the courtroom. The trial court denied the motion, finding

that any need for a mistrial was due to Fedoruk's behavior. In that case, after trial, the trial court did order a competency evaluation, and a psychologist found Fedoruk was in a psychotic state and not competent to proceed with sentencing. On appeal, the Court of Appeals vacated the conviction and held that the trial court abused its discretion when it failed to consider if Fedoruk was competent to stand trial. *Fedoruk*, 5 Wn. App. 2d at 338-39.

In contrast, in *Lord*, the trial court denied a motion for a competency hearing, and we affirmed the denial. In support of the motion, Lord's counsel offered testimony that Lord told a correctional officer that he had spoken with the devil and that the devil asked him to "'drink . . . his own blood to prove his innocence.'" *Lord*, 117 Wn.2d at 901. Lord told the court he was competent and requested that one of his attorneys withdraw. The trial court noted Lord's counsel "had not made any assertion that Lord was unable to recall or relate facts sufficient for defense counsel to proceed." *Lord*, 117 Wn.2d at 902. Upon reviewing the record, we held that the trial court did not abuse its discretion in declining to hold a competency hearing because the "threshold burden of establishing that there was reason to doubt Lord's competency was not met." *Lord*, 117 Wn.2d at 903-04.

Here, McCarthy's counsel argues the trial court should have ordered an additional competency hearing when it addressed McCarthy's motions concerning his conditions in the jail and when he presented his defense theory. However,

neither instance presents a situation similar to the cases finding reversible error where it was found the trial court was required to order a competency hearing. The record indicates no significant change in McCarthy's mental health that would create doubt as to whether McCarthy was incompetent as statutorily defined. It is undisputed that McCarthy understood the nature of the proceedings against him throughout this case. Thus, at issue is only whether McCarthy could assist in his defense.

A defendant can assist in his own defense when he "possess[es] an adequate recall of the factual events involved in the charge against him, [is] able to communicate those recollections to his attorney, and ha[s] both an intellectual and emotional appreciation of the ramifications and consequences of the crime charged." 12 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 902, at 171 (3d ed. 2004) (citing *State v. Gwaltney*, 77 Wn.2d 906, 468 P.2d 433 (1970)). As in *Lord*, this case presents a situation where, although delusions may have been apparent, there was no evidence presented to the trial court that would cast doubt on the defendant's ability to recall facts, communicate with his attorney, or understand the ramifications and consequences of the crime.

While McCarthy's delusions may have changed, including allegations of toxic fumes within the jail and presenting a theory that the victim and his ex-wife

17

were in a relationship, the judges who presided over the proceedings entertained McCarthy's motions, including bringing in jail staff to testify as to the fumes and jail conditions. No party in any of the proceedings following the competency trial raised a concern as to McCarthy's competence. No party had McCarthy evaluated again by an expert witness who could testify as to whether McCarthy was competent during the trial. When the court expressed concerns about McCarthy representing himself in a third strike case, McCarthy seemed to act reasonably by choosing to have counsel reappointed to him when the judge expressed those concerns. There is no indication that McCarthy did not retain composure during his trial. His testimony is an accurate representation of the facts as he believed them. He was coherent throughout trial, and his defense counsel stated that he never had a thought that McCarthy did not know what he was doing.

This case is not similar to *Marshall*, where multiple experts provided evidence that the defendant was not competent at the time of his plea. Nor is it similar to *Fedoruk*, where the defense attorney asked for another evaluation of competency when the defendant could not keep himself composed in the courtroom and was exhibiting signs of a mental breakdown. This case is similar to *Lord*, where we held that simply having delusions, without more, was not a sufficient showing that there was reason to doubt the defendant's competency.

In the present case, McCarthy's appellate counsel cannot identify any event, other than McCarthy's continuing delusions, to support the conclusion that McCarthy was incompetent to stand trial. Further, counsel provides no evidence that any delusions affected McCarthy's ability to recall facts and communicate with his attorney during the trial. Therefore, the trial court's failure to sua sponte order another competency hearing was reasonable, and the trial court did not abuse its discretion.[7]

---

[7] The State argues the Court of Appeals incorrectly vacated McCarthy's conviction instead of remanding for an evidentiary hearing. We need not address this issue because we reverse the Court of Appeals.

## CONCLUSION

We reverse and remand to the Court of Appeals for resolution of the issues raised in McCarthy's personal restraint petition. Under the statutory scheme, the judge was not required to order another competency hearing as there was no reason to doubt McCarthy's competence.

WE CONCUR: