IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>           Respondent,<br><br>      v.<br><br>JUSTYN MYLES BUSCH,<br><br>           Appellant. | No. 81346-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Appellant Justyn Busch was charged with unlawful possession of a firearm in the second degree. Before his first trial, he was found not competent, but his competency was restored at Western State Hospital. At his first trial, the trial judge, based on his observations, declared a mistrial and ordered a new competency evaluation. After a finding of competency, a second trial was held, and no one requested a new competency evaluation. A jury found Busch guilty. He appeals arguing that the second trial judge should have ordered a new competency evaluation. We affirm, but we remand to strike the DNA collection fee from the judgment and sentence.

FACTS

In May 2019, Busch was charged with unlawful possession of a firearm in the second degree. About a month later, the court signed an order for a competency evaluation. The competency evaluator reported that Busch suffered

Citations and pin cites are based on the Westlaw online version of the cited material.

from psychotic disorders that prevented him from understanding the nature of the legal proceedings or assisting his attorney.

Accordingly, the court determined that Busch was incompetent to stand trial, and it entered an order committing Busch for competency restoration. After restoration in November, the court found him competent to stand trial.

Trial began in January 2020. During jury selection, defense counsel alerted the court that Busch seemed agitated. Busch was "not really responding" to officers' requests and not responding to defense counsel's requests. The court observed that there were now four officers standing within a few feet of the defendant, which it felt indicated the officers had a heightened concern for whatever was going on. The court added that it was familiar with the officers and that they were experienced. The court asked Busch, "[W]hat's going on today? You seem to be in a different state than yesterday." Busch responded with a long incoherent statement. Defense counsel stated that when he met with Busch the prior week, Busch's thoughts were more coherent than they were that morning.

The court noted that competency is fluid. The court explained that at that point in time it had concerns about Busch's demeanor in court and that it felt the only solution was to sign a competency evaluation order and declare a mistrial.

The court reasoned:

> [I]t does appear that there's indication from jail staff that there has been a refusal to take medication. Also I'm seeing detailed in this document what I can only describe as assaultive, disruptive-type of behavior as well as threats to self. So based on all of this and the continued, again, I am not sure if it's responding to internal or external stimuli, but it seems to me it's internal. As

well as the lack of linear response to question, the overall demeanor at this time I think there is a manifest necessity to declare a mistrial. It's just entirely unclear to me whether or not this individual is actually competent, whether he can assist his attorney. His attorney has clearly indicated they're having issues which seems to be a lack of communication this morning. Mr. Busch's demeanor is very different than it was the entirety of yesterday.

In February, Busch was again found competent.

A second trial began in March. The State requested to have Busch restrained for a CrR 3.5, 3.6 suppression hearing, basing its request in part on Busch's behavior at the last trial that drew the trial judge's attention.

In arguing against restraints, defense counsel argued that his client had not acted out in any physical aggressive manner and went on to explain what had happened in the previous trial and the circumstances that led to a mistrial. Defense counsel stated, "Mr. Busch has never acted out in the courtroom. He has refused a lot of court appearances, but when he's present he has never acted out." At that point, Busch interjected, "I never refused a court appearance. The COs[1] have refused to transport me to court and that is a contempt of the law. Whatever. I've never refused a court appearance."

The court noted that it had read somewhere that Busch may be on "some sort of medication" and defense counsel explained that previously a judge had granted a request for forced medications. The court inquired into whether Busch was medicated. Counsel responded that Busch was choosing not to answer this question. The court explained it did not have a problem with that, but that the information would help the court's decision. Busch then addressed the court:

---

[1] Presumably, Busch was referring to corrections officers.

The matters -- the matters, Your Honor, to be specific, to be exact, I've been in Snohomish County for the last ten months. This will be 300 days.

I've been all over the world for numerous amount of accomplishments, as well as unfortunate detainings, as I have some type of notoriety of being an African prince. So there is somewhat of a infatuation of my presence in all different areas and aspects.

Unfortunately while being in this county, I have endured the most hinderous, the most obvious and oblique, consistent violation of my civil rights as well as my trial rights, where it is not fair to say that I'm standing here a competent man to go to trial due to mental health issues.

In regards to this case proceeding in criminal matters and criminal court, I'm competent, yes, I am, with adequate mindset. But it is not fair to say in the least that this trial in proceeding in any type of way or fashion with medication, therapy, all of the other different things. I'm going to do it regardless when I get out of here. That's the only way I'll be able to rebound. Being tased is not helpful, you know, and pass-throughs. You know, being denied court transport as far as what happened Friday, you know, a CO named Henry with the oblique and obvious neglect from Sergeant Schwartz being present.

So as a person tries to call themselves making a record, I'm definitely well familiar with the court proceedings and the process for me to go ahead and efficiently make on record the matter of my conditions and my mental status when being asked and being pertains. I'm not speaking incompetency here, to say the least, right, when you ask me about if I'm taking medication on that grounds.

So with that being said, there is definitely a lot of different things to presume regardless once I get out and huge rehabilitation processing step that I have to take. And it's very unfortunate because my father is an attorney in Texas. I went down there to go meet him. Came back. Trying to get my life established and set up, and somehow I end up in this.

So I'm sitting in this whole process. This is not a courtroom or a federal courtroom, but I have several different cases, as well as a 42.90 U.S.C. 93. So many different things going on right now it's not realistic to say that a question can simply be answered yes or no about whether I'm taking medication.

Defense counsel then explained the issues with the officers during the last

trial. They had questioned why Busch was walking around counsel's table, which

4

is what he and counsel had done the day before to prepare for jury voir dire.

Busch became upset, stood against the wall, and would not sit down. Defense

counsel then highlighted Busch's history of mental health evaluations and stated,

> I have told [the prosecutor] I have told [the prior trial judge], and I will tell this court, Mr. Busch has been found competent by Western State Hospital. In my humble opinion he's not competent to stand trial. He cannot assist in his defense from one very important aspect. If he wishes to take the stand, which is his absolute right, I have no confidence that I can ask him a question and get an answer that I would expect or that would be to the point. The court asked a very simple question to me to ask Mr. Busch about medication. He refused to respond to me, but then on his own decided to respond to the court. In responding to that question he talked about being an African prince, his father being a lawyer in Texas. All of that could be true –

Busch interjected and said, "It is very true." Defense counsel then stated,

> -- it is not in response to the question being asked. So that is my concern in terms of his ability to assist me in representing him.
> If you ask him what a prosecutor does, what a judge does, what I do, what a plea bargain is, all of the things that Western State Hospital does in their evaluations, he answers those questions fine. He's a very smart man, but he does suffer from mental illness.
> I don't have the answer for this court. You know, I don't have the answer for this court, but if the court is asking me what my opinion is of Mr. Busch's competency, I don't believe he's competent.

The court responded, "Well, we're not here on a competency evaluation. He's

already been found competent to stand trial by a previous court based upon a[n]

evaluation of Western State. I'm not going to look at that at this point. The issue

is whether I keep him in restraints or not."

The prosecutor then said that the previous order finding Busch competent

was in agreement of the parties, that defense counsel did not challenge

competency in the weeks leading up to this trial, and "[s]o unless there are new concerns, I would ask that the court proceed either way." Defense counsel responded that he has told prosecutors that "Western State will find him competent. I have believed him to be incompetent from day one, and that maintains my position. Whether I sign an order agreed, approved to form, whatever, we cannot continue to go on the hamster wheel. If you're asking me if he's competent, absolute[ly] not, and that has been my position consistently."

Busch interjected again to remind defense counsel, "He was asking you about the restraints." The court agreed, "The issue here is whether or not I should restrain him or not." The court denied the State's request to restrain Busch.

After the State presented its evidence in the suppression hearing, the court asked Busch whether he wished to testify, and Busch stated, "I choose not to testify, Your Honor. I choose to plead my Fifth Amendment right, Your Honor."

During jury selection, defense counsel in questioning a juror stated, "Mr. Busch has made some noises and outbursts a little bit here. Has that been a problem for you?" The juror said, "No. That's his prerogative, I guess." Another juror said, "I figure he's probably nervous."

After the State closed its case, defense counsel told the court that he explained to Busch that he had the absolute right to testify and could do so against his advice but that Busch did not wish to testify. When the court questioned Busch, he confirmed that statement was correct. Busch did not testify.

6

After the jury was excused for lunch after both parties rested, the prosecutor made a record that while the court was instructing the jury, "it appeared that Mr. Busch was lifting and waving his hands at the jury while they were being instructed." The court was not alarmed stating, "I also looked at Mr. Busch and I didn't see anything unusual given what I've seen previously. Any hand movements could be interpreted in any way."

The jury found Busch guilty as charged.

At sentencing, the court found Busch indigent and imposed the $100 DNA collections fee and the $500 victim penalty assessment fee.

DISCUSSION

Competency

Busch contends that the trial court abused its discretion when it did not order another competency evaluation when there was a reason to doubt his competency. We disagree.

The due process clause of the Fourteenth Amendment to the United States Constitution guarantees an accused the fundamental right not to stand trial if he is legally incompetent. State v. Ortiz-Abrego, 187 Wn.2d 394, 402-03, 387 P.3d 638 (2017). Further, under RCW 10.77.050, "[n]o incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." " 'Incompetency' means a person lacks the capacity to understand the nature of the proceedings against him or her or to assist in his or her own defense as a result of mental disease or defect." RCW 10.77.010(16).

A trial court must order a competency evaluation whenever there is a reason to doubt competency. RCW 10.77.060(1)(a). This requirement continues even after a determination of competency. However, once there has been a determination that a defendant is competent to stand trial, a trial court need not revisit the issue of competency unless some objective incident or event occurs where the court is provided with new information that indicates a significant change in the defendant's mental condition. State v. Ortiz, 119 Wn.2d 294, 301, 831 P.2d 1060 (1992).

When making the determination of whether a competency evaluation is necessary, the factors the trial court considers include the defendant's behavior, demeanor, appearance, personal and family history, and psychiatric reports. State v. McCarthy, 193 Wn.2d 792, 801, 446 P.3d 167 (2019). Further, the court should afford "considerable weight" to a defense attorney's opinion regarding his or her client's competency. Id.

Whether a trial court should have sua sponte ordered a competency evaluation is reviewed for abuse of discretion. Id. at 803. "Discretion is abused when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons." State v. Blackwell, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993). If the issue of competency is "fairly debatable," failure to order a subsequent evaluation does not violate RCW 10.77.060, and the trial court did not abuse its discretion. McCarthy, 193 Wn.2 at 803.

Busch asserts that the court should have ordered a competency evaluation before proceeding with a second trial. He argues that his "extensive

8

history of mental health issues, including numerous prior inpatient, outpatient, and involuntary treatment holds, should have caused [the court] great concern." Further, he argues that his prior competency evaluations, a prior mistrial, and defense counsel's belief that Busch was not competent also should have caused the court concern. Id. However, these were all incidents that happened *prior* to Busch having been evaluated again and found competent. The incidents were not new information that indicated a significant change in Busch's mental condition since having been found competent.

Additionally, Busch contends the incidents that occurred on the day of the suppression hearing and during the second trial should have caused the court concern. We disagree.

First, Busch points to the prosecutor informing the court that court staff told the prosecutor that they observed Busch acting aggressively on the morning before the suppression hearing. However, the record contains nothing more about Busch's behavior that morning other than hearsay from the prosecutor. Instead, the prosecutor highlighted what had happened at the first trial that led to a mistrial. Furthermore, defense counsel successfully argued to the court that Busch did nothing to warrant restraining him.

Busch next points to his long-winded answer when the court inquired if he was taking medications. Although Busch's statement was long, he demonstrated that he was able to track what the court was asking him and stated, "In regards to this case proceeding in criminal matters and criminal court, I'm competent, yes, I am, with adequate mindset. . . . So many different things going on right now it's

not realistic to say that a question can simply be answered yes or no about whether I'm taking medication." Busch, on appeal, mischaracterizes this statement as an indication that Busch "could not answer the court's question about any medication he was taking," as opposed to choosing not to answer.

Busch also points to his reference to being an African prince. Although Busch refers to himself as an African prince and purports that his father is a lawyer in Texas, there is nothing in the record to contradict that.[2] Regardless, if it was a delusion, delusions are not enough to constitute a "significant change" requiring the court to order a new competency evaluation after a previous competency evaluation found the defendant competent. McCarthy, 193 Wn.2d at 806 ("[A]lthough delusions may have been apparent, there was no evidence presented to the trial court that would cast doubt on the defendant's ability to recall facts, communicate with his attorney, or understand the ramifications and consequences of the crime.").

Busch's statement may have been long-winded, but it was not a non-linear incomprehensible statement. In fact, Busch is the one who correctly reminded defense counsel that he was veering off track discussing his competency when the question from the court was about restraints. After defense counsel's lengthy statement about Busch's history with mental health evaluations, Busch told his counsel, "He was asking you about the restraints." The court agreed. After the exchange, the court denied the State's request for restraints.

---

[2] Busch's counsel stated, "In responding to that question he talked about being an African prince, his father being a lawyer in Texas. All of that could be true –"

Busch next points to an observation defense counsel alluded to during voir dire when defense counsel asked a juror, "Mr. Busch has made some noises and outbursts a little bit here. Has that been a problem for you?" The juror responded, "No. That's his prerogative, I guess. I don't know how else to say that." When defense counsel asked a second juror the same question, the juror answered, "I figure he's probably nervous, so –" The record lacks any further description of Busch's "little bit" of noises and outbursts. Tellingly, the jurors themselves did not find any concern with them.

Lastly, Busch points to the prosecutor's observations that the defendant was "lifting and waving his hands at the jury while they were being instructed." The court responded that it also looked at Busch and "didn't see anything unusual given what [it had] seen previously. Any hand movements could be interpreted in any way."

Moreover, the record indicates that Busch understood his rights and knew how to exercise them. He chose not to testify at both the suppression hearing and at trial at the advice of his counsel. He told the court, "I choose not to testify, Your Honor. I choose to plead my Fifth Amendment right, Your Honor."

Contrary to what Busch contends, the record is absent of a significant change in the defendant's mental condition. Accordingly, the court in the second trial did not abuse its discretion when it did not order a new competency evaluation.

<u>Legal Financial Obligations</u>

Busch contends that the trial court erred by imposing the $100 DNA collection fee without first inquiring into whether Busch's mental health issues impacted his ability to pay the fee.

"RCW 9.94A.777(1) requires that a trial court determine whether a defendant who suffers from a mental health condition has the ability to pay any [legal financial obligations], mandatory or discretionary." <u>State v. Tedder</u>, 194 Wn. App. 753, 756, 378 P.2d 246 (2016). RCW 9.94A.777(1) provides:

> Before imposing any legal financial obligations upon a defendant who suffers from a mental health condition, other than restitution or the victim penalty assessment under RCW 7.68.035, a judge must first determine that the defendant, under the terms of this section, has the means to pay such additional sums.

The State does not object to striking this fee.

CONCLUSION

The trial court did not abuse its discretion when it did not order a competency evaluation because nothing in the record suggested a significant change since Busch was last found competent. Thus, we affirm, but remand for the trial court to strike the imposition of the DNA collection fee from the judgment and sentence.

Coburn, J.

WE CONCUR:

Mann, C.J.