# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56332-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| ZAKARY A. FRENCH, | |
| Appellant. | |

CHE, J. — French appeals his conviction for attempted first degree murder. French has a complicated mental health history. The trial court found he was competent to proceed to trial after competency restoration. During the trial proceeding, French was disruptive at times. He was aggressive, threatening, and insulting to the corrections deputies. And he urinated in an elevator while being transported from trial. The trial court did not sua sponte order another competency evaluation based upon this conduct. French was convicted, deemed competent again before sentencing, and sentenced to a high-end standard range sentence.

We hold that (1) the trial court did not abuse its discretion in not sua sponte ordering a competency evaluation during trial, and (2) defense counsels were not ineffective for not requesting an exceptional downward sentence based on RCW 9.94A.535(1)(e). Thus, we affirm.

FACTS

A.     *Background*

In April 2018, French stabbed his step-grandfather, Ricky LaFountain, in the neck with a knife.  The State ultimately charged French with attempted first degree murder with the aggravating circumstance of "egregious lack of remorse."  Clerk's Papers (CP) at 516.

B.     *Competency*

French has had a complicated history of mental health diagnoses, including borderline personality disorder, unspecified mood disorder, and depression.  Due to his borderline personality disorder—and exacerbated by his mood disorder, French exhibits aggressive interactions and general hostility and irritability.

French "has a history of irritability, elevated affect, [and] mood instability."  Rep. of Proc. (RP) at 85.  During periods of competency, French routinely interrupted the court during pretrial hearings with varying degrees of outbursts.  Even in pretrial hearings, the court was concerned about the safety of court staff due to French's behavior.  While awaiting trial, French made racial insults and sexually inappropriate comments.  Additionally, he physically attacked others while in jail and made violent threats.

In unrelated matters prior to this April 2018 charge, it appears French had been evaluated for competency four times, and each time, the evaluators opined that he was competent to stand trial.  In June 2018, a psychologist opined that French was competent as he "appears to possess the capacity to have a factual and rational understanding of his charges and court proceedings,

and he appears to have the capacity to assist in his own defense."[1] CP at 34. The psychologist's report noted that French "has a history of 'throwing poop or feces' apparently in jail." CP at 46. And, during this competency assessment period, French "presented with affective dysregulation." CP at 55. While his behavior was agitated, threatening, and aggressive at times, his symptoms did not suggest a diagnosis of overt psychosis. The trial court found French competent to stand trial based on the June 2018 report.

In November 2019, French moved to reevaluate his competency, which the trial court granted. A state forensic evaluator, Dr. Sailey, opined that French did not have the capacity to assist in his defense as of December 2019. Dr. Sailey's conclusion was based on French having an elevated mood for a longer period than was previously normal. Acknowledging that French has had a history of behavioral outbursts since 2016, a history of threatening evaluators, and a history of refusing to answer questions, Dr. Sailey emphasized French's "presentation [of these behaviors] ha[d] a longer duration." RP at 101. The records Dr. Sailey evaluated showed French was uncooperative in every single interaction for the month of November.

Dr. Sailey also noted new developments like unsanitary conditions in French's cell—in contrast to just being unkempt—and a rise in disciplinary action, suggesting he was having trouble controlling his emotional state. Dr. Sailey further noted that French made a continuous stream of verbal threats during Dr. Sailey's interviews, as opposed to occasional verbal threats with previous evaluators. Additionally, French was rejecting some of his medication.

---

[1] The psychologist's full mental status examination could not be completed because of French's threats to the psychologist.

In January 2020, the trial court determined that French was not competent to stand trial as he could not assist in his own defense, and the trial court ordered competency restoration. Shortly thereafter, the trial court ordered French to be involuntarily medicated to restore his competency.

In September 2020, the trial court found French competent based on a Western State Hospital report concluding that his competency had been restored. The period between January 2020 and September 2020 is the only period that French has been deemed incompetent by the trial court in this matter. There is no evidence in our record of any other period that French was deemed incompetent to stand trial.

In January 2021, the trial court again ordered a competency evaluation and found French competent. At the hearing to determine competency, one defense counsel stated, "Your Honor, at this point we're not requesting a second opinion. [A second defense counsel for French] and I do have ongoing concerns about Mr. French's competency, but we'll just monitor the situation and reapproach the Court if we change our mind." RP at 186.

During trial, French was disruptive at certain points: he hit himself repeatedly, cracked his knuckles, rubbed the table, put his feet on the table, groaned, laughed during testimony, and flipped off the prosecutor and the jury.

While not in the courtroom, but still during the trial period, French attempted to urinate on the corrections deputies transporting him back to jail, and he ended up urinating in an elevator.[2] He used racial slurs, and he tried to lure corrections deputies into a fight. French also

---

[2] French urinated in a conference during the first trial in this case. That trial ended in a mistrial on grounds unrelated to French's competency.

spat mucus on the jail walls. French threatened the corrections officers who escorted him from jail.

French had been confrontational with corrections deputies during transport the prior two days when the trial court was informed of much of the aforementioned behavior. After taking testimony on much of this information, the judge expressed concern for the safety of the court staff and considered whether French's conduct amounted to voluntarily waiving his presence for portions of the trial. At no point during the trial did French's two attorneys move for a competency evaluation.

The jury convicted French as charged. Jail records indicate that from January 2021 through the guilty verdict, French's "personal hygiene and cell cleanliness were consistently good with unremarkable mental state." CP at 722. French was cooperative at times with the court during trial. For instance, after the trial court reprimanded French for rubbing the table, he appeared to be able to moderate the behavior shortly thereafter. When the State requested the trial court to admonish French for disrupting testimony by hitting himself and cracking his knuckles, French indicated, "I'll be good." RP at 722. And a deputy noted that after the judge admonished French about pushing courtroom rules, French behaved somewhat better.

French's behavior in jail deteriorated after the guilty verdict.

C.    *Sentencing*

In August 2021, prior to sentencing, the trial court ordered another competency evaluation. A psychologist determined French "has the capacity to understand the nature of the upcoming sentencing proceedings and the capacity to assist in his own defense." CP at 720. The psychologist report noted that corrections deputies were familiar with French's tendency to make

homicidal statements about killing Black individuals. The psychologist concluded that French was "malingering[3] symptoms of mental disorder for the known gain of avoiding prison." CP at 721. The psychologist's report also stated that French repeated claims of homicidal intent towards Black people "with the goal of being court-ordered to psychiatric treatment to avoid prison" and that was consistent with his personality disorder. CP at 724.

The trial court found French was competent to be sentenced. It is unclear if in French's sentencing memorandum, he requested a sentence on the low-end of the standard sentencing range or an exceptional sentence below the standard sentencing range.[4] At the sentencing hearing, French specifically argued, "Although the jury rejected the diminished capacity defense in this case, the Court can still consider under RCW 9.94A.535(1)(e) whether [French's] capacity to appreciate the wrongfulness of his conduct was impaired." RP at 1308. Ultimately, French requested a sentence at the low-end of the standard sentencing range. The State sought an exceptional sentence above the standard sentencing range based on the jury's finding of the aggravating circumstance, an "egregious lack of remorse."

---

[3] To malinger means "1: to pretend to be ill or otherwise physically or mentally incapacitated so as to avoid duty or work . . . 2: to deliberately induce, protract, or exaggerate actual illness or other incapacity so as to avoid duty or work." *Malinger*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002).

[4] French's sentencing memorandum began with a request for an exceptional sentence below the standard sentencing range and developed the request in the analysis section. But the sentencing memorandum in the title requested a "sentence at low end of standard range." CP at 736. And, in the conclusion section, counsel requested a sentence at the low-end of the standard sentencing range.

While the court did take into consideration that "French does have some severe mental health issues," it nonetheless imposed a high-end standard range sentence—304.5 months. RP at 1311-12. French appeals.

ANALYSIS

I. COMPETENCY

French argues that the trial court abused its discretion by not ordering a competency evaluation during trial. We disagree.

RCW 10.77.050 is a codification of the constitutional right to not be tried while incompetent. *State v. Fedoruk*, 5 Wn. App. 2d 317, 335, 426 P.3d 757 (2018). "'Incompetency' means a person lacks the capacity to understand the nature of the proceedings against him or her or to assist in his or her own defense as a result of mental disease or defect." Former RCW 10.77.010(15) (2016).[5] "The mere existence of a mental disorder or the existence of delusions does not prevent a defendant from being competent." *Fedoruk*, 5 Wn. App. 2d at 335.

Former RCW 10.77.060(1)(a) (2016) placed an obligation on the trial court to sua sponte order a competency evaluation "Whenever . . . there is reason to doubt his or her competency." We review the trial court's threshold decision about whether there is a reason to doubt competency—warranting a sua sponte order for a competency evaluation—for an abuse of discretion. *State v. McCarthy*, 193 Wn.2d 792, 802, 446 P.3d 167 (2019). An abuse of discretion occurs when the "decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons." *Fedoruk*, 5 Wn. App. 2d at 335. "[O]nce there has been a

---

[5] The subsequent amendments to RCW 10.77.010 did not change this definition, but merely changed the subsection it appears in. LAWS OF 2023, ch. 453, § 2.

determination that a defendant is competent to stand trial, a trial court need not revisit the issue of competency unless some objective incident or event occurs where the court is provided with new information that indicates a significant change in the defendant's mental condition." *McCarthy*, 193 Wn.2d at 803.

In determining whether there is a reason to doubt a defendant's competency, the trial "court may consider . . ., medical and psychiatric reports, personal and family history, and the defendant's appearance, demeanor, conduct, and past behavior[,]" among other things. *Fedoruk*, 5 Wn. App. 2d at 336. Additionally, the defense counsel's opinion on the defendant's competence is given substantial weight. *Id.* And more generally, "the trial court must consider (1) whether the defendant understands the nature of the charges and (2) whether he is capable of assisting in his defense." *Id.* at 338.

In *Fedoruk*, we determined that the trial court abused its discretion when it failed to order a competency evaluation during trial "[b]ecause there were clear signs that Fedoruk's mental condition had significantly deteriorated since being found competent to stand trial, and because the trial court applied the wrong standard in evaluating Fedoruk's behavior." *Id.* at 339.

Notably, Fedoruk "had a history of rapid decompensation and medication noncompliance." *Id.* at 336. Inability to sleep was a precursor to Fedoruk's manic episodes, and Fedoruk's lack of sleep was brought to the trial court's attention twice during trial. *Id.* at 336-37. Additionally, "Fedoruk exhibited extreme behavior that was similar to behavior he displayed in past mental breakdowns. His behavior became increasingly questionable as the trial proceeded and Fedoruk eventually stopped responding to his attorney altogether." *Id.*

Post-trial, a psychologist determined Fedoruk was not competent to proceed with sentencing. *Id*. And defense counsel expressed concerns about Fedoruk's competency multiple times during trial, including specifically addressing Fedoruk's potential inability to assist in his defense. *Id*. at 337-38.

Here, there is no dispute that the trial court found French competent to stand trial. Therefore, we examine whether new information existed showing French's mental condition had deteriorated since being found competent to stand trial.

French points to the following to show that there was a deterioration of his competency: (1) his mental health history, (2) the trial judge was concerned about the safety of court personnel, (3) French said racial slurs and expletives, (4) French attempted to entice deputies to fight him, (5) the correction deputy's observation that French was unpredictable, (6) French's act of urinating in the elevator, and (7) while in trial, flipping off the jury, hitting himself, cracking his knuckles, making groaning noises, and putting his feet on the table.

This case is readily distinguishable from *Fedoruk*. Importantly, unlike in *Fedoruk*, French did not have a history of rapid decompensation. French's behavioral outbursts, like making groaning noises, are consistent with his pretrial behavior during competent periods. French has exhibited behavioral outbursts since 2016, when he was also found competent to stand trial. And before the trial in this matter began, French made racial insults while in jail.

When French was deemed incompetent, he had been uncooperative in almost every interaction for a month. In contrast, French was mostly cooperative with the court during trial. When admonished, French appeared to be able to moderate his behavior. Corrections deputies

9

thought French was unpredictable but also that he was "behaving pretty well in the courtroom" and "in the mornings he's pretty good." RP at 852, 860.

Much of French's conduct at trial was also consistent with his behavior when competent. French has a history of being aggressive with the individuals around him, including making threats, which is consistent with his diagnoses. After French was again found competent in January 2021, he attempted to bite the finger of a corrections deputy who was putting on French's mask. Additionally, Dr. Sailey confirmed that French has "had a history of threatening evaluators." RP at 101. Dr. Sailey also confirmed that the aggressive quality of French's interactions, his hostility, and his irritability are symptoms that will be present generally due to French's borderline personality disorder.

The trial court's safety concerns were raised even before trial began and appear warranted in light of French's history of aggressive behavior and threats when French was competent. Safety concerns were not new information.

In 2016 and 2017, various mental health professionals determined French was competent to proceed in unrelated matters. In 2018, the trial court initially deemed French competent to proceed based on a psychologist report. In January 2020, the trial court determined French was not competent to proceed. Subsequently, French's competence was found to be restored in September of that year. And the trial court again found French competent in January 2021. The trial court found French competent again post-trial in October 2021. The psychologist who evaluated French after trial determined French exhibited "malingering symptoms of mental disorder for the known gain of avoiding prison." CP at 721. The psychologist's report stated

10

that French repeated homicidal intent towards Black people "with the goal of being court-ordered to psychiatric treatment to avoid prison." CP at 724.

French's act of urinating in the elevator appears to be the greatest deviation from French's baseline behavior. But in the 2018 psychologist report, which found French competent, the report noted that French had a history of throwing feces in jail. And during French's first trial that ended in mistrial for reasons unrelated to French's competency, French urinated in a conference room. Additionally, during the urination incident in the second trial, French told a corrections deputy that their protocol of returning to the jail to use the bathroom "[didn't] work for him and . . . it's an emergency." RP at 854.

Lastly, and most crucially, French's two attorneys never raised concerns about French's competency during trial, which was an important factor in *Fedoruk*. This is particularly significant as at the last competency hearing before trial, one defense attorney stated that both of French's defense attorneys were concerned about French's competency and would actively monitor his competency and raise the issue with the trial court if need be. French's two attorneys not raising competency during the trial when they both were actively monitoring French's competency compellingly shows that his two attorneys believed French was able to understand the proceedings and assist in his own defense.

The trial court has a wide margin of discretion in determining whether there is a reason to doubt competency. *State v. Dufloth*, 19 Wn. App. 2d 347, 355, 496 P.3d 317 (2021). And while French has a complicated mental health history, we conclude that the trial court did not abuse its discretion in not sua sponte ordering a competency evaluation under these circumstances.

11

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

French argues that his attorneys were ineffective by failing to request an exceptional downward sentence as French's mental illness significantly impaired his ability to conform his conduct to the law. We disagree.

To show ineffective assistance of counsel, the defendant must show that their counsel performed deficiently and that the deficient performance prejudiced their defense. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). As to prejudice, "the defendant must establish that 'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Id*. at 34.

French maintains that an exceptional downward sentence was appropriate under RCW 9.94A.535(1)(e). A downward variance is appropriate where "[t]he defendant's capacity to appreciate the wrongfulness of his or her conduct, or to conform his or her conduct to the requirements of the law, was significantly impaired." RCW 9.94A.535(1)(e). Even if we agreed that the defense attorneys were deficient for not requesting an exceptional downward sentence, French must still show prejudice, i.e, that there was a reasonable probability that the trial court would have granted an exceptional downward sentence had defense counsel requested it. French fails to do so.

The record demonstrates that defense counsels ultimately requested a low-end standard range sentence based on French's complicated mental health history and referenced RCW 9.94A.535(1)(e). And the State requested an exceptional upward sentence based on the jury's finding of the aggravating circumstance, an "egregious lack of remorse." RP at 1301.

No. 56332-1-II

While the court did take into consideration that "French does have some severe mental health issues," it nonetheless imposed a high-end standard range sentence—304.5 months. RP at 1311-12. The court considered French's mental health and RCW 9.94A.535(1)(e), as it was brought to the court's attention at the sentencing hearing. Under these circumstances, French cannot show that there was a reasonable probability that the trial court would have granted an exceptional downward sentence had counsel requested one. His ineffective assistance claim fails.

CONCLUSION

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Lee, J.

Glasgow, C.J.

13